UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

DWAYNE WOODS, )
 )
 )
 Plaintiff, )
 )
vs. ) Civil Action No. CV-97-S-2722-NE
 )
UNIVERSITY OF ALABAMA and )
MEMBERS OF THE BOARD OF )
TRUSTEES IN THEIR OFFICIAL )
CAPACITIES, )
 )
 Defendants. )
 )

FILED
98 FEB 17 AM 11:53
U.S. DISTRICT COURT
N.D. OF ALABAMA

ENTERED
FEB 17 1998

## MEMORANDUM OPINION

This action is before the court on defendants' motion to dismiss. Upon consideration of defendants' motion, the pleadings, and oral argument of counsel, this court concludes the motion is due to be granted.

### I. SUMMARY OF FACTS

Dwayne Woods is a black male employed by the University of Alabama at Huntsville (UAH) as a campus police officer. (First Amended Complaint ¶¶ 3, 6.) Woods presently holds a supervisory position on the second shift, and has maintained a good personnel record since his hiring in 1987. (Id. ¶¶ 6, 10.) In December of 1996, Woods complained to Jerry Quick, vice president of UAH, about disparate treatment he observed in the punishment of black police officers employed by UAH. (Id. ¶ 7.) Following that complaint, Woods saw Quick in a campus parking lot on January 13, 1997, and, wanting to discuss his complaint, attempted to attract Quick's

attention by flashing the head lights of his patrol car.[1] (*Id.* ¶ 8.) It worked, but thereafter Quick placed a letter of reprimand in Woods' personnel file for allegedly violating police procedures by flashing his head lights to get Quick's attention. (*Id.* ¶ 9.) Later, Woods alleges also that he was required to provide a doctor's excuse explaining an absence from work, even though he had never had to provide such an excuse before. (*Id.* ¶ 11.)

Woods filed this lawsuit on October 15, 1997, alleging retaliation in violation of 42 U.S.C. 2000e (Title VII) and violation of 42 U.S.C. § 1981. Woods amended the complaint on December 15, 1997, clarifying his assertion of two § 1981 claims: one for racial harassment and one for retaliatory infringement on his ability to contract free from discrimination based on race. Defendants move to dismiss as to all claims.

## II. STANDARD FOR 12(b)(6) MOTION TO DISMISS

Under the liberal pleading requirements of the Federal Rules of Civil Procedure, plaintiffs need only allege "a short and plain statement of the claim showing that the pleader is entitled to relief". Fed. R. Civ. Proc. 8(a). For purposes of a motion to dismiss, the factual allegations in the complaint must be taken as true. *Executive 100, Inc. v. Martin County*, 922 F.2d 1536, 1539 (11th Cir.), *cert. denied*, 502 U.S. 810, 112 S.Ct. 55, 116 L.Ed.2d 32 (1991). Dismissal is appropriate only where it is clear the plaintiff can prove no set of facts in support of the claims in the complaint. *Powell v. United States*, 945 F.2d 374 (11th Cir. 1991).

---

[1] The court notes that the original complaint stated that Woods flashed his blue lights at Quick. That detail was changed in Woods' First Amended Complaint.

2

Accordingly, this court may dismiss a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) when, on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action. *Executive 100*, 922 F.2d at 1539; *see also Bell v. Hood*, 327 U.S. 678, 682, 66 S.Ct. 773, 776, 90 L.Ed. 939 (1946).

### A.  Eleventh Amendment Immunity

The Eleventh Amendment bars suits by private parties "seeking to impose a liability which must be paid from public funds in the state treasury." *Edelman v. Jordan*, 415 U.S. 651, 663, 94 S.Ct. 1347, 1355, 39 L.Ed.2d 662 (1974). Thus, suits against the state, its officials, or instrumentalities, are prohibited. *McMillian v. Johnson*, 101 F.3d 1363, 1365 (11th Cir. 1996), *cert. denied*, ___ U.S. ___, 117 S.Ct. 2514, 138 L.Ed.2d 1016 (1997); *see also Kentucky v. Graham*, 473 U.S. 159, 165-67, 105 S.Ct. 3099, 3104-06, 87 L.Ed.2d 114 (1985).

In Alabama, a public college or university is deemed to be an arm of the state and, therefore, is entitled to Eleventh Amendment immunity. *Harden v. Adams*, 760 F.2d 1158 (11th Cir.), *cert. denied sub nom. Grimmer v. Harden*, 474 U.S. 1007, 106 S.Ct. 530, 88 L.Ed.2d 462 (1985) (citations omitted). Similarly, the Board of Trustees of a state college or university is entitled to sovereign immunity as an instrumentality of the state. *Harden*, 760 F.2d at 1164 (citation omitted).

A state may waive its immunity, and Congress may override immunity by enacting legislation clearly expressing its intent to

3

do so. *E.g., Lassiter v. Alabama A & M University*, 3 F.3d 1482, 1485 (11th Cir. 1993). The state has not waived its immunity in this case, and § 1981 contains no congressional override. *Sessions v. Rusk State Hospital*, 648 F.2d 1066, 1069 (5th Cir. June 26, 1981).[2] Congress has expressly overridden the Eleventh Amendment bar to Title VII claims, however. *See, e.g., Fitzpatrick v. Bitzer*, 427 U.S. 445, 457, 96 S.Ct. 2666, 2672, 49 L.Ed.2d 614 (1976); *Allen v. Alabama State Board of Education*, 816 F.2d 575, 577 (11th Cir. 1987). Thus, defendants are not entitled to immunity from Woods' Title VII claims.

There also are certain well established exceptions to the Eleventh Amendment bar.[3] For example, in *Ex parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), the Supreme Court held that the "Eleventh Amendment does not prevent federal courts from granting prospective injunctive relief to prevent a continuing violation of federal law." *Young*, 209 U.S. at 155-56, 159, 28 S.Ct. 452-53; *see also Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 101, 104 S.Ct. 900, 908, 79 L.Ed.2d 67 (1984); *Green v. Mansour*, 474 U.S. 64, 68, 106 S.Ct. 423, 425, 88 L.Ed.2d 371, 377 (1985). Simply put, official capacity actions against state officials to halt ongoing, unconstitutional conduct are not barred by the Eleventh Amendment. *Kentucky v. Graham*, 473

---

[2] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981)(en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

[3] State officials sued in their individual capacity, for example, are not entitled to the protection of the Eleventh Amendment. See Hafer v. Melo, 502 U.S. 21, 31, 112 S.Ct. 358, 365, 116 L.Ed.2d 301 (1991). Woods has asserted no individual capacity claims in this lawsuit, however.

4

U.S. 159, 163 n.6, 105 S.Ct. 3099, 3104 n.6, 87 L.Ed.2d 114, 122 n.6 (1985).[4]

Even so, Woods' claims are insufficient to invoke this exception. Woods has not alleged an ongoing constitutional violation. Indeed, even if Woods' facts supported such a finding, he alleges no acts taken by the Board or its members which are sufficient to impose liability. Accordingly, plaintiff's § 1981 claims against the University of Alabama at Huntsville and members of the Board of Trustees are due to be dismissed.

**B.   Title VII Retaliation Claim**

Section 704(a) of Title VII provides protection to those who have "opposed any practice made an unlawful employment practice by this [title], or [have] made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this [title]." 42 U.S.C. § 2000e-3(a).[5] To establish a *prima facie* case of retaliation under that provision, Woods must show that (1) he engaged in statutorily protected activity, (2) an adverse employment action occurred, and (3) the adverse action was causally related to the plaintiff's protected activities. *Little v. United Technologies, Carrier Transicold*

---

[4] Money damages that are ancillary to such prospective relief also are not barred by the Eleventh Amendment. *Edelman*, 415 U.S. at 668, 94 S.Ct. at 1358. Permissible ancillary relief includes relief which is "the necessary result of compliance with decrees which by their terms were prospective in nature. ... Such an ancillary effect on the state treasury is a permissible and often inevitable consequence of the principle announced in [*Ex parte Young*]." *Edelman*, 415 U.S. at 668, 94 S.Ct. at 1358.

[5] Section 704(a) thus creates two causes of action: one for opposition to prohibited practices, and one for participation in protected activity. Woods' claim arguably arises under the participation clause, based upon his filing of a complaint with the EEOC. In any event, the court's analysis as to the second element — adverse employment action — is the same under either clause.

5

*Division*, 103 F.3d 956, 959 (11th Cir. 1997); *Jordan v. Wilson*, 851 F.2d 1290 (11th Cir. 1988). Defendants challenge plaintiff's proof on element two, contending that a written reprimand and a requirement to supply a doctor's excuse do not constitute "adverse employment actions" for which relief is available under Title VII.

That phrase, "adverse employment action," has not been defined by the Eleventh Circuit. *See Wu v. Thomas*, 996 F.2d 271, 274 (11th Cir. 1993)(noting absence of Eleventh Circuit cases), *cert. denied*, \_\_ U.S. \_\_, 114 S.Ct. 1543, 128 L.Ed.2d 195 (1994). Nevertheless, many courts faced with the issue have found that adverse employment actions include only actions which tangibly harm an employee, such as failure to rehire, failure to promote, termination, and differential compensation. *See, e.g., Whatley v. Metropolitan Atlanta Rapid Transit Authority*, 632 F.2d 1325 (5th Cir. 1980)(retaliatory discharge); *Bickel v. Burkhart*, 632 F.2d 1251 (5th Cir. 1980)(retaliatory refusal to promote); *Payne v. McLemore's Wholesale & Retail Stores*, 654 F.2d 1130 (5th Cir. 1981), *cert. denied*, 455 U.S. 1000, 102 S.Ct. 1630, 71 L.Ed.2d 866 (1982)(retaliatory refusal to rehire); *see also*, *Wu*, 996 F.2d at 274 (stating that no case has found a valid Title VII retaliation claim in the absence of tangible harm).

The Fifth Circuit recently emphasized that the anti-retaliation provision of Title VII "was designed to address ultimate employment decisions, not to address every decision made by employers that arguably might have some tangential effect upon those ultimate decisions." *Mattern v. Eastman Kodak Co.*, 104 F.3d

6

702, 707 (5th Cir. 1997)(citation omitted). Such ultimate decisions include "hiring, granting leave, discharging, promoting, and compensating." *Mattern*, 104 F.3d at 707 (citation omitted). In *Mattern*, plaintiff was subjected to the following actions: a verbal threat of being fired, a reprimand for leaving her work station, a missed pay increase, and a final warning letter. *Id.* at 708. The Fifth Circuit held that such actions "do not constitute adverse employment actions because of their lack of consequence." *Id.*; *accord Jordan*, 851 F.2d at 1292 (retaliation claim rejected because employee's proof of harm from employer's acts was "speculative"); *Southard v. Texas Board of Criminal Justice*, 114 F.3d 539, 555 (5th Cir. 1997)("Undesirable work assignments are not adverse employment actions"); *Smart v. Ball State University*, 89 F.3d 437, 441 (7th Cir. 1996)(stating that "not everything that makes an employee unhappy is an actionable adverse action").

Plaintiff complains only of two acts by UAH: placement of a letter of reprimand in his personnel file and imposition of a new rule requiring a doctor's excuse for an absence from work. Although those acts may have a tangential effect on Woods' conditions of employment or on his future prospects for employment, they "lack ... consequence" in the sense that they had no effect on Woods' job position, salary, or other benefits. In other words, they did not tangibly harm Woods. Title VII's retaliation provision simply does not reach an employer's inconsequential acts. *Mattern*, 104 F.3d at 708. Accordingly, Wood's Title VII claim for retaliation is due to be dismissed.

7

## C. Section 1981 Claims

The court previously held that Woods' § 1981 are due to be dismissed on sovereign immunity grounds. Nevertheless, even if immunity did not bar those claims, the court finds they are due to be dismissed under Rule 12(b)(6).

Woods claims that defendants violated § 1981 by placing a letter of reprimand in his personnel file, and by requiring him to provide a doctor's excuse for missed work days. Both acts purportedly were caused by Woods' earlier complaint about "disparate treatment he observed in the punishment of black police officers." (First Amended Complaint ¶ 7.) Woods alleges that defendant's actions "constitute illegal infringement on the Plaintiff's ability to contract free of discrimination based on race and further constitutes racial harassment...." (First Amended Complaint ¶ 14.) This court construes Woods' § 1981 claims as asserting two separate theories of liability: retaliation and racial harassment/hostile work environment.

### (1) Retaliation

In the Eleventh Circuit, "[w]hen § 1981 is used as a basis for relief parallel to that provided by Title VII, the elements of a § 1981 claim are identical to the elements of a Title VII claim." *Whiting v. Jackson State University*, 616 F.2d 116, 121 (5th Cir. 1980); *accord Walters v. City of Atlanta*, 803 F.2d 1135, 1143 (11th Cir. 1986). Accordingly, to state a claim for retaliation under § 1981, the plaintiff must allege that (1) he participated in statutorily protected activity; (2) an adverse employment action

8

occurred; and (3) a causal connection exists between the protected activity and the adverse action. *Thomas v. Exxon*, 943 F. Supp. 751, 763 (S.D. Texas 1996)(citing *Goff v. Continental Oil Co.*, 678 F.2d 593, 599 (5th Cir. 1982)(citing *Dickerson v. Metropolitan Dade County*, 659 F.2d 574, 580-81 (5th Cir. 1981))).

Woods' claim for retaliation under § 1981 suffers from the same fatal flaw as his Title VII claim: the acts allegedly endured by Woods do not constitute adverse employment actions. Thus, Wood's claim for retaliation under § 1981 is due to be dismissed.

**(2) Racial harassment/hostile work environment**

The plaintiff in a racial harassment case can establish a violation of § 1981 by showing that his work environment is "so heavily polluted with discrimination as to destroy completely the emotional and psychological stability of minority group workers...." *Vance v. Southern Bell Telephone and Telegraph Co.*, 863 F.2d 1503, 1509 (11th Cir. 1989)(citing *Vaughn v. Pool Offshore Co.*, 683 F.2d 922, 924 (5th Cir. 1982)(quoting *Rogers v. EEOC*, 454 F.2d 234, 238 (5th Cir. 1971))), *overruled on other grounds*, *Patterson v. McLean Credit Union*, 491 U.S. 164, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989). Liability based on a hostile work environment exists when plaintiff's "workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21, 114 S.Ct. 367, 370, 126 L.Ed.2d 295, 301 (1993). To state a claim for a hostile work environment

9

based on racial harassment, Woods must allege that: (1) he belongs to a protected class; (2) he was subjected to unwelcome racial harassment; (3) the harassment was based on race; (4) the harassment affected a term, condition, or privilege of employment; and (5) respondeat superior. *See Henson v. City of Dundee*, 682 F.2d 897, 903-05 (11th Cir. 1982).

To satisfy the fourth element, Woods must plead facts from which a jury could infer that the harassment was "severe or pervasive enough to create an objectively hostile or abusive work environment...." *Harris*, 510 U.S. at 21, 114 S.Ct. at 370. In determining this question, courts must look to the totality of circumstances and determine whether a reasonable person would find the work environment hostile or abusive. *Id*. at 23, 114 S.Ct. at 371; *see Edwards v. Wallace Community College*, 49 F.3d 1517, 1521 (11th Cir. 1995). Important factors to consider include: the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance. *Harris*, 510 U.S. at 23, 114 S.Ct. at 371.

Woods has asserted no facts to support a finding that such an environment existed at UAH. Neither act alleged by Woods — taken together or separately — supports a jury finding that he was subjected to an objectively hostile working environment. The two acts underlying this lawsuit simply were not sufficiently frequent, severe, threatening, humiliating, or unreasonable to have

10

interfered with Woods' work performance. In short, those acts are not sufficiently severe and pervasive to constitute racial harassment.

Additionally, Woods does not allege a single fact that supports an inference that the acts complained of were motivated by racial animus. Woods makes no claim that only black officers were subjected to the new rule requiring a doctor's note for missed work days, or that any white officer had flashed his lights at a UAH vice president and received no letter of reprimand. Woods has failed to allege any facts which would support a finding that he has suffered discrimination based on his race, and therefore, he has failed to set forth a § 1981 claim. *Gorman v. Roberts*, 909 F. Supp. 1493, 1498-99 (M.D. Ala. 1995). Woods' § 1981 claim for racial harassment/hostile work environment is due to be dismissed.

### III. CONCLUSION

For the foregoing reasons, the defendants' motion to dismiss is due to be granted. An order consistent with this memorandum opinion shall be entered contemporaneously herewith.

DONE this 17th day of February, 1998.

United States District Judge